We'll hear argument next in case 2480, Babcock v. Kijakazi. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to begin with the statutory text. Section 415A7A is found at Petition Appendix page 69A, and it excludes from the Windfall Elimination Provision, quote, a payment based wholly on service as a member of a uniformed service, as defined in Section 410M. David Babcock, who served as a dual-status technician in the National Guard for 33 years, qualifies. Indeed, 32 U.S.C. 709 requires technicians like him to literally, quote, wear the uniform of the armed services, be a member of the National Guard, and hold the military grade specified by the Secretary. And Babcock did. He wore the U.S. Army uniform day in, day out, teaching people how to fly Black Hawk helicopters and the like. Babcock engaged in service. He was a dual-status tech. He's undoubtedly a member of a uniformed service. Indeed, the Section 410M expressly says National Guard folks qualify. The government says Babcock was a civilian. Even if this were true, it would be irrelevant. The key statute, 415, doesn't use a civil versus military dividing line. It simply asks, was the service uniformed? The government attempts to say that Babcock's service was not as wholly a member of the uniformed service. But the best reading of the statute, even before one gets to the veteran's canon, rejects that. There is no status language in 415. The government would convert the word as into a status test, trying to discern what hat someone was wearing at a given point in time. Congress certainly could have made such a choice, and indeed it has in many other statutes, but it did nothing like that here. So we have three basic arguments. One, the statute doesn't look to civilian status. It looks to uniformed service. Second, even if civilian status mattered, this would meet it. Dual status tech service is irreducibly military. And third, if there's any ambiguity, the veteran's canon would suggest reading it in favor of Mr. Babcock. Counsel, if, just a simple factual question, if he, if Petitioner was receiving his, was exclusively uniformed service, then why is he receiving a civilian pension and a military pension? Yeah, that's just the way the statute works. And I, Justice Thomas, it's very much like something that's common ground between both the government and us, which is that inactive service members who didn't pay into the system would receive both. That that's what Congress certainly had in mind and the uniformed service exception. That's not exactly, I'm, part of it's civilian and part of it is military. If your argument is right, it would seem that it would be all military. That makes sense if you're talking about NOAA or you're talking about the Coast Guard. It's all, it's consistent with what you're saying, that the service was uniformed service as opposed to part civilian, since he's wearing more than one hat. It's dual, it is a dual position. So part civilian, part military. And I don't understand how you could have that and now argue that it's all military. Well, we're saying, Your Honor, that it is, it's all uniformed service. That's the language of 410M. And so it does certainly have some civilian overtones. Civilian versus uniformed service are not mutually exclusive categories. Is there any other, is there any other service where that's the case? Other than this? Well, NOAA and the Public Health Service. But they're designated by statute, right? Correct. And Petitioner is not. NOAA, Justice Thomas, that is designated by statute just as much. So the National Guard is enumerated. Congress specified in the uniformed service exception, certain services that were defined as uniformed. And that's 410M. And when you look at 410M and the cross-reference, it says that NOAA and Public Health Services are certainly included, but so too is the National Guard of the United States. Now, Justice Thomas, you're absolutely right. There is no other category besides dual status technicians that fall within our argument about 410M. But Petitioner is not acting as a member of the National Guard of the United States all the time. So our argument is that he is all the time, and that Congress and 410M didn't draw any distinction. Now, absolutely, Justice Thomas, my friend on the other side has made that argument before this Court for the first time, that there's some distinction between the National Guard of the United States and the National Guard in general. And as I was saying to you in my first answer to you, the problem with that is that it would ultimately – first of all, that's not the way the government administers the statute. At page 24 of their brief, they admit that it covers inactive duty folks. And if there's the National Guard of the United States, and that's the only thing swept up in the uniformed service exception, the problem with that is then Congress didn't reach the one category that was common ground, that we both agree was covered by the uniformed service exception. That's why I think this late-breaking theory by the Solicitor General, 27 years after the statute has passed, I don't think really works. It also doesn't work because the statutes say that once you're a member of the National Guard, you're automatically concurrently enlisted in the National Guard of the United States. And here that's really true. As I was saying, Babcock is required, as with all dual-status technicians, to wear the uniform, a United States uniform. So he wears the United States Army. It's emblazoned on his uniform when he goes to work every day. I don't think the fact that — I don't think when they say the uniformed service, they mean does he wear a uniform or not. I mean, I appreciate he wears the uniform because of his National Guard service. But he gets two checks, right, two checks a month or however often. One is for his National Guard service, the — I don't know whether it's a weekend a month or however much it is. And then another check for his 9-to-5 civilian job. The former is based wholly on his uniformed service, working in the uniformed service. But the other is based wholly on his civilian job. Now, the one is subject to the exemption from the windfall exception, if that's right. But the other isn't because it's certainly not based wholly on his service in the National Guard. It's based on his civilian service. So, Mr. Chief Justice, we do think that the other is one that falls squarely within the uniformed service exception. That is, you're absolutely right. The statute doesn't ask are you literally wearing a uniform at any time. It asks are you a member of a service that is a uniformed service. And then the statute tells us exactly what is a uniformed service in Title 42. And it includes the National Guard in contrast to, as Justice Thomas was asking about, Title 5, which for purposes of other things, like bookkeeping, calls them civilian. So I don't think the fact that they are civilian answers the fundamental question, which is, is Babcock serving as a member of a uniformed service at the time? Now, my friend on the other side says, well, that's a different hat, because that is the hat National Guard, the state National Guard. But, as I say, if that's the test, then it would mean inactive duty folks who stand very much like Mr. Babcock wouldn't be able to be eligible for the uniformed service exception either, because they fall in the same exact category. They're people who didn't pay into the system before 1988. Congress undoubtedly said for those folks, absolutely, they should get it. And the reason for this, and it sounds a little arcane, but I think the reason why this all exists is people like Babcock or others joined federal employment with a certain set of expectations, and one of those expectations was they would get a windfall if they fell within this. Congress later changed that in 1983 and adopted a broad windfall elimination provision, one that sweeps very large, 1.9 million people are encompassed by that. But in 1994 they said, well, if you're serving in uniform, if your service is wholly there, then you should get an exemption, a uniformed service exemption. And so that's what it's about. And so it's certainly about inactive service folks who didn't pay into the system but see their paycheck slashed decades after they started their employment. They don't really remember whether they paid into the system or not. Congress said, we want to get rid of that. And as our reply brief at page 14 says, once Congress decided to get into that question, then it stands to reason that folks like dual status technicians like Mr. Babcock are just like those inactive service folks. They're people who didn't pay into the system but see their paycheck slashed decades later, and these are people who are truly through and through military, to the extent that that was even the test in terms of the way they perform. I don't see how you can say through and through military when their job title is dual status. I mean, what are the two statuses? Well, it's a military and civilian, to be short. Yeah, sure. So their pension payments are not based wholly on the military service. They get a pension based on their military service, and that works the way you want the whole thing to work in terms of accepting the application of the windfall exception. But I don't see or I think you – well, how does the other part of it? Not the whole thing. I understand you want to look at the whole thing and say the whole thing is based on military service. It seems to me the whole system separates out the two to the extent that they call the position dual. So two things, Mr. Chief Justice. First, the title is not just dual status tech. You can see it at 32 U.S.C. 709B, which is petition appendix page 64A, and it's military technician dual status. And then at 10 U.S.C. 10216, it calls them military technicians and military 24 whopping times. So I think Congress has said to the extent that you even looked at this military-civil line, I think they're calling them more military, if anything. Now, the second point is we don't think that the words of the statute have some sort of purity test, that you've got to be all military all the time. You don't have to be all military all the time, but maybe you do when they say the payment has to be based wholly on service as a member of the uniformed service. I agree that's one way to read it. I just don't think it's the best way. And so, you know, let me walk you through the way that we understand wholly, which is it's a very severe test, as our reply brief at page 10 says. What it says is that if there's even a drop of money that comes not from uniformed service, then you don't get the exception, the uniformed service exception. So Congress in 1983 passed a broad provision, the windfall elimination provision, which says, quote, if any part or whole of the money comes from non-covered service, then you're in the windfall elimination provision. That's what they said. That's a sweeping, broad provision. It affects 1.9 million Americans each year. And then Congress said we're going to enact a narrow exception only for those who are wholly in uniformed service. People have basically spent their career doing that. And so the word wholly has a lot of meaning. It's integral to our reading of the statute because without it, it means that you can have just a little bit of money from uniformed service, and then you're entirely out of this broad windfall elimination provision. So it's not the case that we're not giving wholly work. We're giving it a lot of work. Indeed, it's integral to the way we read the statute. To my friend's reading, and, Mr. Chief Justice, I think your reading, suggests that wholly would modify the word service, not payment. And I think that's not what Congress had in mind. Congress certainly has in other statutes focused on the status or something like that. But it hasn't here. And that's why our brief linguistically walks you through that at page 29, saying wholly would have to be two words down in the statute in order for this to apply. And so we do think it's the best reading of the statute to understand this. I think the government itself, at page 22 of their brief, admits that wholly modifies the word payment, not service. And so when you read the statute, you simply ask whether or not the service is as a member of a uniform service. And here, when someone like Mr. Babcock or dual status technicians are performing their duties, they're literally having to wear the uniform, having to be in military rank, having to comply with all sorts of fitness requirements that us civilians do. What if a private employer said, I'm very patriotic, I really like employing members of the National Guard, and all of these same requirements that you're articulating says, I want you to wear your uniform to work, I want you to maintain a certain rank, I want you to maintain a certain fitness level. But Mr. Babcock is doing the same job that he's doing, you know, teaching pilot flight school, but he's doing it for a private employer. Would that be service as a member of the National Guard? It wouldn't. So two things, Justice Barrett. First is, of course, if a private employer did anything at this point in time, it's all covered employment. Well, imagine not. I just want to make sure that, you know, focus on it's impossible for these kinds of hypotheticals to rise. And then second, we definitely don't think that a private employer can somehow supplement and define what is a National Guard duty. Those are enumerated by statute in 709 and 10216. But why would that matter? You know, why does it matter if there are two employers rather than one? Is it just the fact that he works for the government? It's not two employers rather than one. We're just asking, when you ask what is service as a member of a uniformed service, I think that can only be done by someone who is a member of a uniformed service. Now, if the hypothetical is the employer makes those people become, say, National Guard members or something like that. That is not hypothetical. Then our point would be, in that circumstance, they'd still have to be performing the duties that National Guard folks do enumerated by statute, not other duties. If they're doing other things, their service is not as a member of a uniformed service. How about if they're delivering food to the National Guard? It's a private company with all of the prerequisites that Justice Breyer had said. And they're delivering mess. I think you'd look to the way Congress has characterized the duty if there's any clue, like here there is, you know, to say you want to focus on military or something like that. And the reason for that, Justice Sotomayor, is what is civilian and what looks military is actually really hard. Take your example of food. A culinary specialist is a chief petty officer in the U.S. Army. It is thoroughly a military position. But it's cooking food. And so I do think that the way to deal with this, and this only affects, obviously, a narrow set of people, is to ask what did Congress have in mind in the roles that it was enumerating? Here Congress had roles in mind like the one that Mr. Babcock does, teaching people how to fly military helicopters. Where do you get all of that from the language? We get it from the school. The language gives us those two requirements. First, that your job has to require you to be a member. And secondly, that it be one of these specified jobs. Just read the language to me and tell me where. Right. So the language of the statute is service as a member of a uniformed service. So we think that has three components to it. One, got to be a member. You know, and here, of course, membership of the National Guard is required. Second, that you got to perform the statutory duties that are enumerated by the statute, as opposed to Justice Barrett's hypothetical, like adding some other duties that a private employer does. So a cook is listed. So what else? Yeah. And then lastly, you know, whether it's a uniformed service or not. And that's defined by the statute, as I was saying to the Chief Justice, in 410-F. So how do you exclude the chef? He's in the Army. He's a petty officer. Right. I do think if Congress has defined that as a enumerated duty of the National Guard, then that person would qualify. Here, there are enumerated duties of the National Guard found in 709 and 10216. And as our brief explains, dual status technicians are integral to the performance of those duties. You know, that's been said time and again by different people, members of the military, you know, civilian officers, even the government's own briefs to this court in an admittedly different context. The Ferris context calls them irreducibly military. Mr. Katyal, is training pilots to fly Black Hawk helicopters one of those enumerated duties? We do think it falls directly within the enumerations of 709, which is organizing, administering, instructing, or training the National Guard and or armed services and the like. So, yes, we think it does fall that way. We don't think you have to get into any of that here because Congress did use a pretty simple test, simple language that affects relatively few people. So if there's any doubt about this, we would suggest you apply the veteran's canon, as Justice Alito's unanimous opinion for the court in Shinseki said back in 2011, if there's any ambiguity, read it in favor of veterans. And so we think that that would answer it. And I think, you know, my friend on the other side suggests that there's somehow some sort of civilian bar in the statute, and I think this is implicit in the Chief Justice's question to me as well. But the relevant statutory language doesn't say that. It just says uniform service. Well, the way that Chief Justice read the language, I think, and this is the way I read the language too, is that we can sort of make this simpler by saying a payment based wholly on military service. Do you think that that's right? Is there a difference? If I say a payment based wholly on military service, is that the same as or different than the statutory language? I think it may be the same. It will obviously depend on how you read wholly. We don't think you should read wholly the way that they read it to essentially say that there's wholly will modify service, which I think could be done. Well, a payment based wholly on military service means that the payment has to be for entirely military service. Exactly. So if that's the way you read it, Justice Kagan, we don't disagree. So people like Babcock who spent their whole career in the dual status technician role and get a payment for that, that's a circumstance in which they fall within the exception. If we contrast that to a modified Mr. Babcock, someone who spent half of his time, say, working at the Department of Transportation and non-covered employment and half of his time working as a dual status tech, that person would not be eligible for the uniform service exception. So if I understand what you're saying in terms of the way you read this statute, the only thing at issue is when he receives his paycheck, is it entirely for military service, or might it be for other things as well? Is it entirely for uniform service? Now you're changing it because I asked you, is it the same as for military service? Oh, I'm so sorry. I didn't hear the last part then. So, yes, we do think there's a difference between uniform service and military service, and Congress gave you an express textual indication of that by enumerating the public health service and NOAA as two examples. Those are people who are not military. The government, you know, dances around this in their brief, but they certainly don't call them military because that would be preposterous. Instead, what people like NOAA and public health services folks are are uniform service, and that's why Congress used that specific phrase. They could have picked up any other military test, as our brief says. There are all sorts of military pay stub tests throughout, including about the National Guard, like 709B and so on, but not this one. And so here Congress just simply asked, is the service as a member of a uniform service? And to answer that question, you look to what is a uniform service. So are you saying, well, we concede that the payment is not entirely for military service, but it's all for uniform service? We don't concede it. We do think if you went there, this is irreducibly military at the end of the day, but we don't think you have to get there. That is not the language of the statute. We think we meet the government's test, but we don't think the government's test is right. We think it's a simpler test affecting a very small number of people, but obviously people to whom this amount of money is really important. Isn't it that, I mean, is there anything wrong with my reading the legislative history? Is there anything wrong where the statute's ambiguous? If I turn to a House report, which was so common, and still is, where someone who works on the staff explains what they mean, and that explanation is run by all the Senators, and either they or their staff sign off on it, and here no one objected. And what they seem to say, when I read House Report 103, 506, whatever it is at 67, I read it, and it seems to say that these smaller groups of people who were actually in military reserve between 1956 or whatever the years were, they're the ones we're trying to help, not anybody else. So, Justice Breyer, we certainly don't have any problem with you looking at legislative history. Some of your colleagues might, but we certainly don't. And we think if you look at it, you draw exactly the opposite conclusion, because Congress did say, you're absolutely right. Congress said military pensions focused on inactive service members and the like in the legislative history says that. But Congress didn't use those words. They used far broader words. The person who wrote the legislative history got it wrong. The person who wrote that report didn't actually read the statute and didn't really know what the statute said. Justice Breyer, there's nothing in there that excludes dual status technicians in the legislative history. It's just for a small, closed group of people who receive military pensions. Correct. And we agree it is a small group of people either way, whether dual status technicians Based, at least in part, on non-covered military reserve duty after 1956 and before 1988, which I admit I don't understand. Correct. We agree that that is the heart of what the statute is about. Our only point is the language Congress ultimately settled on doesn't have any of those terms in it. And once you start reading it the government's way, you're then into the problem of, wait, Congress then didn't do anything. It didn't cover even in active duty folks, which is, as you were saying, the paradigmatic case of what they wanted to cover. All right. Questions? Mr. Cockeill, when Mr. Babcock was working, did he get one paycheck or two? So he got, when he was working in I assume he's retired now. Yeah. So he got one paycheck for his National Guard service. When he went into active duty, for example No, no, no. One paycheck for his National Guard service. Did he get one paycheck for his 9 to 5 job and one paycheck for the National Guard job? I will let you, I just want to make sure of what the record says. I'll get that for you on rebuttal. But he does get two separate checks for pension, right? Correct. One for his 9 to 5 job and one for his National Guard job. Correct. And in the way that the statute works, it goes payment system by payment system. So it asks whether the CSRS payments are all wholly as a member of a uniform service or not. And then if he has, for example, state and local pension, that's a whole separate system and a separate calculation under the windfall elimination provision. You don't aggregate them together. Just to be clear, I'm asking when he's working, at the end of the month, does he have And this is my National Guard check for the time I spent working as a National Guardsman, military status, right? But he had this separate, you will fight the separate maybe, but he also had the 9 to 5 job. Because that's what made him dual status. Oh, yeah. No, I don't think he gets a separate paycheck for that. I think that's all one paycheck. It's just I think his military service, to the extent he's on active duty or something like that, that is a separate paycheck. So I think those are the two paychecks. I will confirm this in the record. You say to the extent he's on active duty. Is it to the extent he's not, the National Guard has not been called up, but he's in the National Guard for specific periods, right? Correct. Okay. So you're going to let me know if he got a separate paycheck for his 9 to 5 job and a separate paycheck for the time he was doing National Guard work. Yeah, I'm pretty sure it's all the same thing because, you know, literally every time he's going to work, he's wearing the uniform and performing his National Guard dual status technician duties. I don't think there is any separate paycheck, but I just want to double check what's in the record. Okay. Thank you. Justice Thomas? Yes, Counsel. Just a question as an aside. What would have been the difference in the treatment of a petitioner if he had exercised the option in the 1980s to switch from CSRS to FERS? Yeah. So if he elected to be in FERS, then he would be in covered employment, and then he'd be outside of the windfall elimination provision because it doesn't encompass, at least for those going forward years, non-covered employment. It only applies to non-covered employment. So once you're in the language of FERS and covered employment, you're outside of the windfall elimination provision. So he exercised an option that put him in the current position that he's in. Correct. And, you know, as he says, this is Petition Appendix page 44A, when he joined the service, he thought he was entitled to a certain stream of benefits. They then changed it on him. And, yes, he had the option to convert, but conversion had all sorts of problems inherent to it. Yeah, but that was true in the 80s for every federal employee. Correct. And what Congress in 1994, Justice Thomas, said was, uniformed service folks are going to get a benefit that other federal employees don't get. We want to benefit them in a certain way because they're seeing their paychecks slashed, as are, of course, civilian employees, but they wanted to do something for uniformed service folks. That was different and special. Thank you. Justice Breyer? Justice Levy? Justice Levy, anything further? On this two checks, he got a check for his 9-to-5 job for the State National Guard, and he got a separate check for his inactive duty military service. When he got called up for his two weeks or weekend duty for the Army National Guard, he got a separate check. Correct. And so he's being paid two pensions now, one by his 9-to-5 job, and he does get a military pension as well. That is correct. So that's the answer to the Chief's question. I'm pretty sure it is. I just want to see what's in the record. Absolutely. Yes. Thank you. Justice Kagan? Justice Barrett? No. Thank you, Counsel. Ms. Reeves? Mr. Chief Justice, and may it please the Court, when a dual status technician retires, he receives two separate streams of payments, and the application of the Uniformed Services Exception depends on the basis for each set of payments that he receives. First, he receives Civil Service Retirement System payments from the Office of Personnel Management for the work that he performs in his full-time civilian role as a technician. Those payments do not trigger the Uniformed Services Exception because they are based on his civilian employment. A technician also receives a second stream of payments, which are military retirement payments from the Defense Finance and Accounting Service for his part-time military service, that is, his inactive duty training and drills and his active duty service in the National Guard. Those military retirement payments do trigger the Uniformed Services Exception because they are based wholly on service in a qualifying National Guard capacity. And Petitioner and other dual status technicians like him, when they were in the role, received two separate paychecks with two separate leave and earnings statements. One was a paycheck for their 9-to-5 technician work, and the other was the paycheck for all their inactive and active duty service. Congress also repeatedly categorized technician service as civilian service, not uniformed service. First, Congress did not include dual status technicians within the definition of a member of a uniformed service that is cross-referenced in the Uniformed Services Exception. Second, in Section 10216 of Title X, one of the two primary provisions that governs dual status technicians, Congress describes technicians as civilian four separate times. And third, in Title V, Congress defined technician employment as falling within the civilian service of the government and ensured that technicians would receive civilian retirement payments for their civilian employment. I think I'd start then by discussing a couple of points that my friend on the other side made. And the first is whether an individual knows what type of status they're in at any given point in time. And it's actually quite clear what status a technician is at any point. During his 9-to-5 job, a technician is doing work in the technician role. And in that role, he has a variety of benefits that he doesn't have while he's working in his National Guard role. And that includes the fact that he can join a union, he can file complaints with the EEOC and MSPB, he can receive compensatory time off and workers' compensation. And he's compensated under the federal GS system. That's different from his National Guard service, which he performs on weekends or if he's called up to active duty. Now, my friend on the other side has suggested that if you were to accept the government's position in this case, in active duty service, such as training and drills, wouldn't trigger the Uniformed Services Exception. And that's wrong because of a specific provision that deems such service as federal for the purpose of federal funding. And that provision is 10 U.S.C. 12602A, which provides that for the purposes of laws providing benefits for members of the Army National Guard of the United States, military training, duty or other service performed by a member of the Army National Guard of the United States, in his status as a member of the Army National Guard, for which he's entitled to pay from the United States, shall be considered military training, duty or other service in the federal service. So let me unpack that a little bit. What that means is that when an individual is in his state status, which usually happens when he's doing an active training and drills, because of this provision, he's paid by the federal government as a general matter. And that does, in fact, trigger the Uniformed Services Exception because that payment is payment for qualifying service. Now, dual status technician service is different because Congress has categorized that service as outside the Uniformed Service and the payments for that service as civilian in nature. Counsel, as I understand your colleague on the other side, and I may not, but as I understand it as best I can in this area, we all understand that the National Guard's been served in at least two capacities. And one of them is denominated by the government for purposes of its own HR administration as civilian. And so, fine, he served as a civilian when he was working as a technician. That's how you classified it. But just looking at the language of the statute, and I think this is the argument in the simplest terms as I understand it, were the payments based, were they made wholly on service in the capacity of as a member of the Uniformed Service? And the answer he would give is yes, because while you denominated civilian for certain purposes, you also said it could only be performed by someone who is a member of a Uniformed Service. So the work may be civilian for a bunch of other purposes, but it can only be performed by someone who is serving in the capacity of a National Guardsman. What's wrong with that argument? I think there are a few things that are wrong with that argument. One is that a precondition to hold a given role doesn't render service in that role and payments for service in that role wholly for service in the capacity of the prerequisite. Let me stop you there. Why not? Because if the work, civilian work, whatever words you want to put around it, can only be performed, has to be wholly performed by someone who is a member of the National Guard, why doesn't that take care of the word wholly for you? So I think it writes out the word as, and the fact that we're in agreement, I think that as means in the capacity of, and the fact that Congress. All right. So if we're moving from wholly now, we're putting that aside. Okay. So you're not arguing wholly. We're going to as. All right. As is a very important word in this case. I got that. In the capacity of is, I think, how you would argue it is. Yes. Why isn't the civilian work being performed in the capacity of by someone who has to be a National Guardsman? So I think in the capacity of and by someone that has to be are two different terms. And I guess maybe an analogy would be helpful here. But the work is civilian work being performed as, okay, wholly as a National Guardsman.  I know it's a lot to hold in one's head at the same time. One could be both civilian and performing work as a National Guardsman. But what's wrong with that? So they can't be because Congress has said they can't be. Congress has said that an individual, that there's something called National Guard Service, and we pay individuals military pay and give them military pensions. That's all over in Title 10, though. Here we are in Title 42. And what do you do just in Title 42 itself? So I think in Title 42 itself we looked at what is uniformed service, and we see that a member of a uniformed service is not a technician. And we know that when Congress wanted to include an individual who doesn't really look normal to us, who don't have expertise in this area, like a member of the PHS Corps or the NOAA Corps, it explicitly included them within that definition of uniformed service. It didn't do that with technicians. So are we blowing past as now, and now we're on to uniformed service? We're not blowing past anything. I think the best reading of the statute is looking at the entire phrase and giving meaning to the definition of member of a uniformed service, which doesn't include technician service, giving meaning to as, and the fact that service needs to be performed in that capacity, and giving meaning to wholly, and the fact that payments themselves have to be entirely or completely based on qualifying service. And we know that. Let me try it one more time, and then I promise I'll stop because I'm beating a horse that's pretty dead, I think. Payments based wholly on service, okay, civilian service, based wholly on civilian service performed in the capacity of a National Guardsman. I think that's the reading, okay? I think that's as best I got it, and I may be completely off base. Mr. Koch will tell me. But what's wrong with that? Why can't we hold these two things in our head at the same time? I think because of the definition of uniformed service, and I don't think we can just look at the Title 42 definition because Title 10 is one of the two provisions that creates dual status technicians, and it refers to their service as civilian four separate times. Now, my friend on the other side has noted that they're referred to as military technicians multiple times, but that just refers to for whom they work. It doesn't refer to the nature of their service. So I think that we can't just read this in a bubble, and when Congress enacted this, it was enacting it against the backdrop of the fact that National Guard members do have different types of service and that National Guard members for the most part are part-time service members. And I think it's helpful to compare the service that a dual status technician renders with two other types of service that the National Guard has. One is active guard reserve, and those are individuals who hold a full-time military role, and all of their pay for their 9-to-5 job receives the benefits of the uniformed services exception. And the National Guard also employs civilian employees who aren't members of the National Guard. And all of these individuals may perform service that seems to us to be very important to the National Guard and integral to its functioning, but what matters for the purposes of the uniformed services exception is how Congress chose to define the service, and Congress chose to define the service. Sotomayor, what about Mr. Katyal's point that there is a statutory list of duties performed by people like Mr. Babcock, and that that list can be read to include Mr. Babcock's training, you know, of pilots? So the description he was referring to is in 32 U.S.C. 709, which describes what dual-status technicians do on a day-to-day basis, and that includes organizing, administering, instructing the National Guard. And that is certainly what he did during his 9-to-5 technician job. We aren't debating that in any way, but even though that's important to the National Guard, integral to its functioning, that was his 9-to-5 civilian service, and that's separate from his weekend training and reserve service. So I don't think the fact that Congress decided to list off their roles here tells us anything about whether that service is in the capacity of a member of a National Guard. And it's also important to note that Congress also has wholly civilian employees of the National Guard who aren't members of the National Guard and don't have that prerequisite. They can also be trainers like Mr. Babcock was. What is the purpose of this dual-status setup? Why would it not have been sufficient for these employees to be simply civilian Federal employees if they want to be in the National Guard on the side? Fine, they can be in the National Guard. So I can't answer that question as to any individual technician, because there are tens of thousands of them, and they do have very different roles. It might be a different answer for Mr. Babcock. The individual who was the plaintiff in Martin, the Eleventh Circuit case on this issue, was a personnel clerk, so he did paperwork but still had to be a National Guard member. But I can tell you why we got here and maybe some of the benefits of it. As to the why, this is really a holdover of how states had structured the system before. So in 1916, Congress authorized states to hire military caretakers who were the predecessors of dual-status technicians. And states developed a practice where most of these individuals had to be members of the National Guard. Well, is this just a historical accident, or is there some benefit to the Federal Government or to the National Guard from having these people in a dual status as opposed to an overlapping status, as opposed to completely discrete statuses? So I think the benefits are that it definitely helps the National Guard with enrollment because these civilian jobs are very attractive with all the benefits that they have. And it also does help the National Guard from the perspective of cohesion and unit readiness. These individuals do get called up with their National Guard units and do inactive training and drills with them. I don't think any of that really tells us anything about how to answer the question presented here, just because, as I previously discussed, what we have to look at is the status itself, as Congress has defined it, and the type of payments that Congress has provided for that, not whether it looks military or looks essential to us. I think, my friend, let's talk for a moment about HOLI and what kind of work that term is doing here. We read HOLI as an adverb that modifies the adjectival phrase that begins with based on, and that phrase in turn modifies payment. I think we're all in agreement on that reading, and what that means is that we have to look at the nature of this particular payment here. And I think even if the Court were to accept my friend on the other side's functional approach, which says that this looks like National Guard service, so we should treat these payments as it for being payments that trigger the uniformed services exception, that doesn't work because HOLI indicates that even if you're taking that functional approach, which we don't think you should, the payments are not wholly based on that. An individual member of the National Guard who's not a technician cannot receive the CSRS civil service retirement system payments that petitioner received. He can't hold that technician role. And I think because of that, HOLI does do work under our reading. And the problem with my friend on the other side's reading of HOLI is it actually is reading HOLI as in whole or in part. Petitioner suggests that if there was a CSRS payment that was partially based on military service and partially based on non-military service, that could somehow be apportioned out, and only the part based on military service would trigger the uniformed services exception. But that's actually completely against the text of the uniformed services exception. And if this Court were to find that dual status technician payments trigger the uniformed services exception, it would be the only situation in which a CSRS payment could be entirely based on military service and would be subject to the uniformed services exception. If the Court has no further questions. Further questions? I have just a minor question. How big a problem is this now that CSRS no longer exists? I can give you a partial answer as to the number of individuals that this will impact. So this will only impact individuals who are in the dual status technician role before 1984 and are still receiving CSRS payments or are eligible to receive them and are not yet receiving them. And because of data keeping limitations, I only have the number of dual status technicians who retired after 2004 or are eligible to retire, and that's about 53,000 National Guard dual status technicians. This case will also impact a smaller number of Air Force and Army technicians. Those forces have dual status technicians like these. It's a much smaller number because the force authorizations for those have been smaller. So that's unfortunately all that I can provide for you, but it's a fairly small group of individuals that this case will possibly impact. Thank you. Justice Breyer? Justice Alito? Justice Brewer? Kagan? Thank you. So we agree this only impacts folks who are still receiving CSRS benefits that they would have been eligible for before 1984? Based on service before 1984 or service that began before 1984 and continued. All right. And then secondly, if no man alive can figure this out, does the veterans canon have any role to play here? So obviously I disagree with your premise there. I think that there are a lot of textual clues in this statute and in related statutes that indicate that our reading is the better one, but I don't think the veterans canon has any play here for a couple of reasons. The first is that the group of individuals that this would benefit, Congress has defined as not being veterans, and that's because technician service itself doesn't create any sort of veterans preference. It doesn't give someone veterans benefits. It's only the National Guard service that someone renders that can possibly give technicians veterans preference. So I don't think that would be an appropriate place to apply the veterans canon because the veterans canon is usually applied to statutory schemes that themselves are intended to benefit veterans. Military, not uniformed service. We're back to that. I don't think it's back to that because I disagree that technician service is uniformed service. Technician service isn't within the definition of uniformed service. Sorry, I didn't mean to go back there. Thank you, Counsel. You agree, however, that there is a veterans canon that would apply when statutes are ambiguous generally. You say it doesn't apply here both because it's not ambiguous and because it's not really veterans as we normally think about it. Yes. We are not contesting the availability of the veterans canon to resolve grievous ambiguity. Justice Barrett. Thank you, Counsel. Rebuttal, Mr. Katyal. Thank you, Mr. Chief Justice. Three points. First, as Justice Gorsuch was indicating, we do think that the plain text controls here. There are two key features of our argument. First, Section 415 looks to service, not status, and in particular uniformed service. And second, Congress has specifically defined National Guard service as uniformed service and dual status technician service in particular as part of that and has labeled it military. Second, Mr. Chief Justice, he got one paycheck for his DST service, his dual status service. That's Petition Appendix page 42A. That is, to be sure, a civilian paycheck under Title V. Our point is civilian, where your paycheck comes from doesn't matter for purposes of 415. 415 doesn't ask that, and indeed, as Justice Gorsuch was saying, it's not mutually exclusive. You can have a civilian paycheck but still be serving, your service may still be performed as a member of a uniformed service. There is no pay stub test. Congress has used pay stub tests even with respect to the National Guard, as our reply brief points out. Here they didn't do anything like that. They used the words service as a member of a uniformed service. They didn't try and embrace a paycheck test or anything like that. Mr. Katyal, I'm sorry to interrupt your rebuttal, but I want to make sure I've got this right. Did he receive one paycheck for his civilian status duty and one for his National Guard duty? No, one paycheck for it all. That is, his job is all part of one thing. So when he shows up to work as a dual status technician, he falls within all the requirements of 709, wearing the uniform, all that stuff. He doesn't have some separate hat he's wearing for purposes of 415. He's just, he's getting one paycheck. Is it allocated separately? Only to the extent, as I was saying before, he's in active duty or something like that. But otherwise, he's getting one paycheck. It is a civilian paycheck, but that's not the way, that's not what the test is. What about weekend service, like when he goes for training and drills? And the weekend stuff also comes in the military DFAS payments as well. So that's the separate, we could say it's two separate paychecks in so far as you're talking about, his weekend National Guard service that you might do even if you were in private employment. To the extent he was doing any weekends or something like that, that's military and separate. That's military and separate. Does he get paid for that? He does get paid for that, absolutely. Is that different than the pay he gets for his 9-to-5 job? It is, because that's Title V. But he does get two paychecks for, not for his dual status service, but anything else. So then my friend on the other side said that there's a statute that she's just pointed out, 12602, which says that, she says it fills the gap and allows him to cover National Guard of the United States. That's not an argument they've made before in 27 years, but I don't think that that statute actually works. Indeed, it's inconsistent with their own view of the word holy, because their own view of holy is that Title V, because they say Title V is responsible for these civilian payments. So let me get back to you. Person A, Monday, Tuesday, Wednesday, works as a technician, nothing really, at the Army base, but does nothing that a civilian doesn't do there. Then on Thursday, he does a special National Guard duty, and on Friday, they're nationalized, so he has a Federal thing. He gets one paycheck for that week, is that right? If he's nationalized, he would get a separate military pay stub and a separate military paycheck. Okay. So for Monday, Tuesday, Wednesday, Thursday, he gets one paycheck. Correct. Now, okay. How do they deduct the Social Security for that? It goes to two systems, doesn't it? It does go to two systems. All right. So how do they do it? They deduct two amounts, one for the one day of Thursday and another for the ---- No, it's system by system, and that's the way the windfall elimination provision works. So you only look to, and I was saying this in my opening remarks, you only look to, for example, the CSRS payments. Here, there's only one stream of CSRS payments. They're all wholly uniformed services. So that's why we think he falls within it. Now, if there's any ambiguity in this, we would suggest that the Veterans' Canon does apply, and the government doesn't argue, Justice Kavanaugh, that they're not, that Mr. Babcock and other dual-status technicians aren't veterans. Pointedly, the last paragraph of their brief says the reverse, that they are veterans. And so if there is any ambiguity, we would suggest that you read it that way. And I think it would be a very dangerous thing to fall on the 12602 argument that my friend has just raised because it's inconsistent with what they say wholly means, and also, indeed, it may boomerang on them because it says if you're, quote, entitled to pay from the federal government, then that counts as federal service. Well, undoubtedly, Babcock is entitled to pay for his federal service, for his dual-status technician service Monday through Wednesday. That makes him part of the uniformed service exception. Thank you, counsel. The case is submitted.